**In the Matter of the Complaint of National Marine Service, Inc., For Exoneration From or Limitation of Liability.**

**NATIONAL MARINE SERVICE, INC.**

v.

**The STATE OF TEXAS.**

**Civ. Nos. 7135, 7339.**

United States District Court,
E. D. Texas,
Beaumont Division.

Jan. 5, 1973.

Joseph Newton, Fulbright, Crooker & Jaworski, Houston, Tex., for National Marine Service, Inc.

Gilbert T. Adams, Adams & Browne, Beaumont, Tex., and Louis Neumann, Asst. Atty. Gen., State of Texas, Austin, Tex., for State of Texas.

## MEMORANDUM DECISION

STEGER, District Judge.

This cause arose out of a fire at the West Port Arthur Bridge on the evening of September 13, 1970. The MV DELTA CITIES was pushing four loaded gasoline barges through the draw of this bridge when the last barge in the tow, the NMS NO. 41, came into contact with the fender works on the south side of the opening. As a result of this contact, the side of the barge was holed, and escaping gasoline ignited. The resulting fire damaged the bridge and the Barge NMS NO. 41 and the MV DELTA CITIES. Three members of the crew of the DELTA CITIES lost their lives and the remaining five were injured.

National Marine Service, as owner of the DELTA CITIES and the barges, filed this proceeding, asking the Court to exonerate it from liability with respect to any claims which might be asserted against it or, in the alternative, asking that its liability be limited pursuant to the applicable statutes.

In response to the notice duly issued admonishing claimants to appear herein, claims were filed by the State of Texas, for damage to the West Port Arthur Bridge, and by National Marine Service for payments to, for, and on account of the master and crew of the MV DELTA CITIES. Claims were also filed on behalf of certain members of the crew of the DELTA CITIES and their survivors, but payments have been made by National Marine Service on account of all these claims, and they are no longer being pursued herein, except as they are asserted by National Marine Service, for its own use and benefit.

By its second amended cross-claim, counter-claim, and third-party complaint

filed herein, and by separate suit (Civil Action No. 7339, consolidated herewith), National Marine Service has asserted a claim against the State of Texas and the Texas Highway Department, for physical damages and loss of use of the MV DELTA CITIES and the Barge MNS NO. 41, and its right to recover, by assignment, subrogation, indemnity, contribution, or otherwise, the sums it has paid those claiming on account of injuries and death.

The State of Texas contends that the casualty was due solely to negligent navigation and unseaworthiness on the part of the DELTA CITIES and the barges and negligence of their master and owner, that the State therefore should be exonerated and should recover its damages from National Marine Service, that National Marine Service is not entitled to limit its liability, and that the claims against the State should be dismissed.

## FINDINGS OF FACT

The Court finds as a fact that the West Port Arthur Bridge where the fire occurred maintained a clearance of one hundred (100) feet or more, from fender system to fender system on either side of the canal.

That there was no projection from the fender system at the time and on the occasion in question.

That the replacing of the wooden fenders with steel facings was not and did not constitute a deviation from the plans for the construction and reconstruction of said bridge, nor did the steel facings and employment of steel in the erection of the fender system constitute a deviation from said plans, nor were they a substantial change in the plans and specifications. But the use of such steel in said fender system was required and necessary and were only technological improvements in keeping with the needs of the industry and business of maintaining the fender system for the protection of the bridge. That the U. S. Coast Guard of this District with jurisdiction over the water way in question, never objected to or complained about said steel fender system though it inspected and viewed said fender system and approved the installation of steel fenders.

That the fender system in question as maintained by the Texas Highway Department at the time and on the occasion in question did not unreasonably obstruct the free navigation of the Intercoastal Canal.

That the tow boat on the occasion in question was not seaworthy in that it had a worn and old cable which under stress and strain of cutting the rudder hard to starboard and accelerating the engines broke and caused the tug to move to port side, and forward, and pushed the left corner of the first barge into the fender system and jammed in its side causing the spilling of the gasoline.

That the company and its officials were aware that the skegs were on the tow boat and that they impeded its operation and maneuverability and made it unseaworthy.

That the company failed to instruct its crew, its captain and pilot as to the condition of the tides and currents at this location, failed to instruct its personnel with reference to speed in going through this bridge opening, at this locality, failed to have fender guards on its barge which would have absorbed the shock of the barge coming in contact with the fender system, and would have prevented sparks and fire igniting the gasoline and would have prevented the caving in or pushing in of the side of the barge; failed to have a man on the front end of the tow to signal the pilot in ample time to maneuver said tow and barges, as a result of which said vessel was unseaworthy. That Federal Code of Regulations 270.180(e)(3)(1) and each of them were violated at the time and on the occasion in question.

That the company and its official personnel failed to instruct its captains and pilots and personnel not to come into contact with the fender system and apparently acquiesced in the practice of rubbing the fender system.

That the pilot and captain on the tow boat at the time and on the occasion in question did not have adequate and proper control of the tow, was negotiating this bridge opening at a greater rate of speed than an ordinarily prudent operator would have operated said tow under the circumstances then obtaining.

That the pilot, the captain, in charge of the tow was insufficiently trained and instructed and not capable of properly operating said tow at said location and as a result said vessel was unseaworthy. That the Company and its officials were in privity with and knew of the captain's, the pilot's inadequacies, the inadequacies of the vessel, its cables, tackles, skegs and personnel.

That the tow boat DELTA CITIES after the collision and fire had a reasonable market value of Forty Thousand and no/100 ($40,000.00) Dollars.

That the barges after the fire and collision had a reasonable market value as follows:

Barge N.M.S. No. 40 of ........... $138,895.00
Barge N.M.S. No. 41, after repairs of .. 145,000.00
Barge N.M.S. No. 42 of ........... 154,200.00
Barge N.M.S. No. 43 of ........... 78,090.00

That the tow boat and DELTA CITIES were fastened and affixed together with one (1″) inch cables drawn tight and flush together with ratchets and were for all practical purposes affixed together as if they had been welded together and constituted one long vessel the same as one with four (4) separate compartments and an engine room. That to turn one end in one direction would swing the other end in the opposite direction, and in considering what was the offending portion required considering the entire tow as the offending vessel and the value of all should be included in limitation proceedings.

## CONCLUSION

It is the Court's conclusion that the tow boat at the time and on the occasion in question was equipped with an old and worn cable which broke and caused the tow boat to push the first barge into the fender system, that the skegs on said tow boat made it not maneuverable, that the personnel was not properly trained and instructed or warned, that there were not fenders put on the barge to absorb the shock, that said vessel was unseaworthy and its personnel unseaworthy by virtue of lack of instruction and knowledge, all with the knowledge and privity of National Marine Service, Inc., and its officers and officials.

That the State of Texas was not negligent in any respect and that there was no projection from the fender system.

That the State of Texas and the Texas Highway Department at all times material herein properly maintained said fender system.

That the State of Texas and the Texas Highway Department were not negligent at the time and on the occasion in question, that there was no deviation from the original plans and specifications of said bridge nor of the new plans for reworking said bridge; that the bridge and fender system were approved by the United States Corps of Engineers, that the fender system did not unreasonably obstruct the free navigation of the Intercoastal Canal.

That National Marine Service, Inc., is not entitled to limit its liability.

That the National Marine Service, Inc.'s acts and conducts as herein set forth and as shown by the evidence in this case are solely responsible for the loss and damage herein complained of.

That the State of Texas should recover of and from National Marine Service, Inc., its damage in the sum of One Hundred Forty-Seven Thousand, Four Hundred Eighty and 37/100 ($147,480.37) Dollars, together with interest thereon from date of September 13, 1970, to date of payment at six (6%) per cent per annum and all costs of Court.

Judgment shall be entered in accordance with the findings made by the Court herein.